IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Lucile M. and Hewlett K. Sullivan, Jr., <br><br> Defendants. | Civil Action No.: 8:15-cv-00563-JMC <br><br> **ORDER AND OPINION** |

Plaintiff Beattie B. Ashmore ("Plaintiff"), in his capacity as court-appointed Receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed this action against Defendants Lucile M. Sullivan and Hewlett K. Sullivan, Jr.[1] ("Defendants") to recover grossly excessive payments received by Defendants as a return on their investment in the Wilson-AB&C Ponzi scheme.[2]

This matter is before the court pursuant to Defendants' Motion to Certify and Amend the Order For Interlocutory Review Pursuant to 28 U.S.C. § 1292(b). Specifically, Defendants request that the court amend the Order denying Defendants' Motion to Reconsider (the Order Denying

---

[1] Defendants have stated that Hewlett Sullivan is now deceased. (ECF No. 48 at 2 n.3.)
[2] "A Ponzi scheme is a fraudulent investment program in which funds are paid in by investors and later investors['] funds are used to pay out nonexistent phantom profits to the original investors, thus creating the illusion that the fraudulent investment program is a successful, profit generating enterprise which, in turn attracts new investment funds that are used to sustain the fraudulent program." *United States v. Wilson*, Cr. No. 8:12-cr-00320-JMC, ECF No. 1-1 at 2 ¶ 6 (D.S.C. Apr. 4, 2012). In *Wilson*, the United States alleged that Wilson, through AB&C, "orchestrated a Ponzi scheme whereby he led investors to believe that he was investing their money in silver, when, in fact, Wilson was not buying silver but using the money for his personal gain. . . [and] [t]o keep the Ponzi scheme going, Wilson also made payments to earlier investors to whom Wilson made representations that their investments were earning high rates of return –sometimes in excess of 200 percent." *Id*. at ECF No. 17 at 1.

1

Defendants' Motion to Certify Questions of State Law) (ECF No. 68) that was entered on February 8, 2017, to state that the necessary conditions for interlocutory review are met. Plaintiff opposes Defendants' Motion, asserting that it should be denied. For the reasons set forth below, the court **DENIES** Defendants' Motion to Certify and Amend the Order for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b) (ECF No. 71).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the court appointed Receiver in *In Re: Receiver for Ronne Gene Wilson and Atl. Bullion & Coin, Inc.*, C/A No.: 8:12-cv-02078-JMC, ECF No.1 (D.S.C. July 25, 2012), a case related to this matter. Plaintiff alleges that "[o]n August 24, 2001, Defendants made an initial 'investment' [in the Wilson-AB&C Ponzi scheme] of $21,750.00." (ECF No. 1 at 4 ¶ 24.) "Subsequently, Defendants made additional 'investments' of $211,350.00 between September 8, 2003 and February 3, 2009 for a total investment of $239,100.00." (*Id*. at ¶ 25.) Plaintiff further alleges that "Defendants withdrew a total of $3,448,110.00 [from the Wilson-AB&C Ponzi scheme] between September 2002 and February 2012 resulting in a profit of $3,209,010.00." (*Id*. at ¶ 26.)

Based on his appointment as Receiver tasked with "locating, managing, recouping, and distributing the assets of the Wilson-AB&C investment scheme," Plaintiff commenced this action against Defendants on February 6, 2015, asserting claims for fraudulent transfer (in violation of the Statute of Elizabeth, S.C. CODE ANN. § 27-23-10 (2014)) and unjust enrichment. (ECF No. 1 at 1 ¶ 1 & 6 ¶ 38-7 ¶ 52.) On August 30, 2016, Defendants filed a Motion to Certify Questions of State Law (ECF No. 39) seeking certification to the South Carolina Supreme Court of seven questions "that may be determinative of the cause of this case when it appears that there is no controlling precedent in the decisions of the Supreme Court." (*Id*. at 3.) Plaintiff filed a Response

in Opposition (ECF No. 41) on September 16, 2016, to which Defendants filed a Reply on September 26, 2016. (ECF No. 42.) After the court denied Defendants' Motion to Certify Questions of State Law (ECF No. 46), Defendants moved for reconsideration on December 15, 2016. (ECF No. 48.) On February 8, 2017, the court entered the Order denying Defendants' Motion for Reconsideration. (ECF No. 68.)

On February 17, 2017, Defendants filed a Motion to Certify and Amend the Order for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b), asserting (1) 28 U.S.C. § 1292(a)(2) requires interlocutory appeal and (2) 28 U.S.C. 1292(b) provides an alternative ground for interlocutory appeal, which Defendants contend is met because (a) the issue presents a controlling issue of law, (b) substantial grounds for differences of opinion exist, and (c) certification would materially advance the disposition of the litigation. (ECF No. 71.)

On February 28, 2017, Plaintiff filed an Opposition to Defendants' Motion, asserting (1) Defendants' Motion seeks relief that cannot be granted, (2) 28 U.S.C. § 1292(a)(2) does not apply, and (3) this court should not certify an appeal to the Fourth Circuit under § 1292(b). (ECF No. 80.) On March 7, 2017, Defendants filed a Reply to Plaintiff's Opposition, in large part re-asserting their position they laid out in their Motion to Certify and Amend the Order for Interlocutory Review Pursuant to 28 U.S.C § 1292(b). (ECF No. 81.)

## II. JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Plaintiff's allegation that the Complaint "is so related to the *In Re Receiver*, 8:12-cv-2078-JMC case and the underlying criminal case, *United States v Wilson, et al*, 8:12-cr-00320[,]" cases in which the court has jurisdiction, "that it forms part of the underlying case or controversy." (ECF No. 1 at 1 ¶ 3.) The court may properly hear Plaintiff's state law claims for fraudulent transfer and unjust

enrichment based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ." 28 U.S.C. § 1367(a).

### III. LEGAL STANDARD

In civil actions, a party may only appeal from final orders and certain limited interlocutory and collateral orders of the district courts. *See* 28 U.S.C. §§ 1291, 1292; *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949). This limitation "advances the important interest of avoiding piecemeal review of ongoing district court proceedings," which "would not only delay the ultimate resolution of disputes by spawning multiple appeals," but would also "undermine the independence of the district judge." *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 119 (4th Cir. 1994) (citations omitted).

The Courts of Appeals have authority under 28 U.S.C. § 1292 to hear certain interlocutory decisions by district courts, but only under very limited circumstances. Under 28 U.S.C. § 1292(a)(2), "the court of appeals shall have jurisdiction of appeals from interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property."

Alternatively, a district court may certify an order to the Court of Appeals for interlocutory review under 28 U.S.C. § 1292(b) when the district judge believes that the order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

If a district court approves an interlocutory appeal, the only issue before the Court of Appeals is whether the district court abused its discretion in denying the motion in question. *See*

*Simpson v. Duke Energy Corp.*, Nos. 98-1906, 98-1950, 1991 WL 694444, at *2 (4th Cir. Sept. 8, 1999) ("We review a district court's refusal to certify a question to the state's highest court for abuse of discretion."); *see also Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (determining that use of certification procedure "rests in the sound discretion of the federal court").

## IV. ANALYSIS

Defendants requested the court to certify to the South Carolina Supreme Court the following issues:

1. Whether South Carolina law allows a Court to grant equitable relief, under the common law theory of unjust enrichment, against one investor in a Ponzi scheme in favor of another investor where (a) all investors took an equal risk; (b) the investors' contributions were immediately put at risk when invested and the investors recognized the time value of their money; (c) the proceeds appeared to be the very performance which was promised; (d) the investors would have received similar benefits if the scheme had been a legitimate investment; (e) the other investors were not plaintiffs in the case and were equally "at fault" in trusting an investment advisor who ran the Ponzi scheme; (f) the investors reasonably changed position in reliance on the benefit so that restitution would be inequitable; (g) the investors who reasonably changed position would be placed under significant hardship if restitution was required of them; and (h) the perpetrator of the scheme suffered no injury and had no justifiable claim to recover money from the investors to whom it made the original conveyances when the continued existence of the scheme benefited from the payments to some investors in order to attract later investors.

2. Whether South Carolina law allows a Court to require investors to disgorge the proceeds of their investments in a Ponzi scheme after (a) they became final transactions and (b) the investors had changed their position in reliance upon the finality of the transaction.

3. Whether the doctrines of *in pari delicto* and unclean hands apply to the potential beneficiaries of an action brought by a Receiver when they were equally "at fault" for trusting an investment advisor who ran a Ponzi scheme.

4. Whether South Carolina's Statute of Elizabeth (S.C. CODE ANN. § 27-23-10) allows for recovery when funds were paid to one creditor rather than another when its stated aim is to prevent persons from defrauding all their creditors by transferring assets to a third person.

5. Whether it is a matter for the South Carolina legislature, and not the Courts, to decide if final financial transactions can be disturbed in South Carolina to redistribute funds from a Ponzi scheme.

6. Whether South Carolina law recognizes that when both parties to a dispute have an equitable interest, the first to acquire an equitable interest prevails.

7. Whether under South Carolina law, the interests of justice demand the use of equitable tolling to expand the liability of investors in an investment that was later determined to be a Ponzi scheme.

In the court's Order denying Defendants' Motion to Certify Questions of State Law (ECF No. 46 at 5), the court made the following observations in denying Defendants' Motion to Certify:

> Defendants fail to demonstrate how answers to their fact-specific questions will absolve them from liability as a "net winner." Moreover, the court is unconvinced by Defendants' presumption that the victims of the Wilson-AB&C Ponzi scheme are classified as "equally innocent investors." South Carolina has sufficient controlling precedent regarding Ponzi schemes under the Statute of Elizabeth and the doctrine of unjust enrichment, which allows Plaintiff to recover "profits" from net winners in this case. Therefore, the court finds that it is unnecessary to certify Defendants' proposed questions to the South Carolina Supreme Court.

The dispute in this matter is whether 28 U.S.C. § 1292(a)(2) or 28 U.S.C. § 1292(b) requires an interlocutory appeal of the court's Order denying the Motion to Certify. (ECF No. 46.) Section 1292(a)(2) is "interpreted narrowly to permit appeals only from the three discrete categories of receivership orders specified in the statute, namely orders appointing a receiver, orders refusing to wind up a receivership, and orders refusing to take steps to accomplish the purposes of winding up a receivership." *S.E.C. v. Black*, 163 F.3d 188, 195 (3d Cir. 1998); *see also State St. Bank & Trust Co. v. Brockrim, Inc.*, 87 F.3d 1487, 1490 (1st Cir. 1996) (holding that an order was not appealable under § 1292(a)(2) since it did not come within one of the three discrete categories described in the statute). This "narrow interpretation of the statute . . ., restricting it to orders refusing to direct actions, makes good sense." *S.E.C. v. Am. Principals Holdings, Inc.*, 817 F.2d 1349, 1351 (9th Cir. 1987) (citing 9 J. Moore, *Moore's Federal Practice* § 110.19[2], at 208

(1986)). Otherwise, "virtually any order of the receiver within the scope of its jurisdiction would be potentially appealable." *Id*.

The court's Orders denying the Motion to Certify Questions of State Law and the Motion for Reconsideration (ECF Nos. 39, 47) do not fall within any of these three discrete categories and therefore, are not immediately appealable under § 1292(a)(2). To follow Defendants' logic, any ruling concerning the Receiver's actions would be subject to an immediate appeal, a counterproductive result that would slow district court proceedings involving receiverships and create piecemeal review of ongoing district court proceedings.

Defendants alternatively contend that they should be permitted to appeal pursuant to 28 U.S.C. § 1292(b). (ECF No. 7.) To invoke this section, the court must agree that (1) its order involves "a controlling question of law," (2) as to which there is "substantial ground for difference of opinion," and (3) the immediate appeal of the prior order "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "All three elements must be satisfied for certification." *Anderson v. S.C. Elec. & Gas Co.*, No. 3:15-cv-04887-JMC, 2016 WL 3067190, at *3 (D.S.C. June 1, 2016) (citations omitted). "Unless all of the statutory criteria are satisfied, 'a district court may not and should not certify its order . . . for an immediate appeal under [§] 1292(b).'" *Clark Constr. Grp. Inc. v. Allglass Sys., Inc.*, No. DKC 2002-1590, 2005 WL 736606, at *1 (D. Md. Mar. 30, 2005). Furthermore, "the Fourth Circuit has cautioned that '§1292(b) should be used sparingly and . . . that its requirements must be strictly construed.'" *Id*. (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)). Because § 1292(b) is a "narrow exception to the longstanding rule against piecemeal appeals," it is "limited to exceptional cases." *Beck v. Commc'ns Workers of Am.*, 468 F. Supp. 93, 95-96 (D. Md. 1979).

Defendants have not convinced the court that the three statutory requirements are met. First, the court's prior Orders do not involve a "controlling question of law." The court's Order denying the Motion to Certify Questions of State Law expressly stated that the proposed certified questions "are not outcome determinative" and that Defendants had "fail[ed] to demonstrate how answers to their fact-specific questions will absolve them from liability as a 'net winner.'" (ECF No. 46 at 2, 5.)

Second, there is no "substantial ground for difference of opinion" concerning the question before the district court. Federal courts are quite accustomed to reviewing existing state law and decisions and "[must] attempt[] to do as the state court would do if confronted with the same fact pattern." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994). As a result, certification is only appropriate "if the available state law is clearly insufficient." *Id*. The court believes that South Carolina's case law as to claims for fraudulent conveyance and unjust enrichment is established well enough to provide the appropriate legal foundation for the court's analysis.[3]

Third, an immediate appeal of the court's decision would not materially advance the ultimate termination of the litigation. Instead, it is obvious to the court that an interlocutory appeal would only further delay the ultimate termination of the litigation. The court has sufficient experience in addressing novel legal issues and in the context of a Ponzi scheme, the court is confident it can reach a reasoned and principled decision just like the appellate courts of South Carolina would if they were presented with the same issues. *See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 369 (4th Cir. 2005) ("If the Supreme Court of South Carolina has spoken neither directly nor indirectly on the particular issue before us, we are

---

[3] Defendants concede that there is South Carolina case law addressing fraudulent conveyance and unjust enrichment. (ECF No. 48 at 2.) Their arguments focus on the dearth of case law regarding these claims in the context of a Ponzi scheme. *Id*.

called upon to predict how that court would rule if presented with the issue. In making that prediction, we may consider lower court opinions in South Carolina, the teachings of treatises, and the practices of other states."). Therefore, the court does not find that all three elements have been satisfied for certification.

V.     CONCLUSION

Upon careful consideration of the parties' arguments and for the reasons set forth above, Defendants' Motion to Certify and Amend the Order for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b) (ECF No. 71) is **DENIED**.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 14, 2017
Columbia, South Carolina